IN THE UNITED DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

YANCE CALHOUN,
              Petitioner,

              v.

UNITED STATES OF AMERICA,
              Respondent.

CIVIL ACTION No.

05-10358-RWZ

### PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION

Petitioner Yance Calhoun respectfully submits this memorandum of law replying to the Government's Response to his §2255 Motion. For the reasons stated in his Motion and in this Reply Memorandum, the Petitioner's Motion should be allowed.

### ARGUMENT

The Government makes three arguments in opposition to Petitioner's §2255 Motion: (1) that there was no Sixth Amendment violation of the sort identified and proscribed by the Supreme Court in United States v. Booker, 125 S.Ct. 738 (2005); (2) that Mr. Calhoun has failed to satisfy the "cause and prejudice" standard imposed on habeas petitions seeking relief for unpreserved constitutional error; and (3) that this Court lacks authority to apply Booker retroactively to vindicate Mr. Calhoun's rights. None of these arguments can stand up to scrutiny.

### A. A Sixth Amendment Violation Occurred.

In Booker, the Supreme Court held that the federal sentencing guidelines are subject to the jury trial requirements of the Sixth Amendment, and that the mandatory enhancement of a defendant's sentence, based on facts found by the court, violates the Sixth Amendment. See Booker, 125 S.Ct. at 755-56. Booker held that the mandatory

1

application of the federal sentencing guidelines is unconstitutional, and that the guidelines can be constitutionally applied only in an "advisory" capacity.   See id. at 757. A Sixth Amendment violation occurred here because the District Court, in sentencing Mr. Calhoun under the then-mandatory Guidelines regime, increased his Offense Level by two levels based on the Court's own finding that Mr. Calhoun had used a weapon in the commission of the drug offenses to which he pled guilty.  U.S.S.G. 2D1.1(b)(1).

In response, the Government argues that no Sixth Amendment violation occurred because (1) by pleading guilty to the specified crimes, Mr. Calhoun admitted facts sufficient to sentence him at Offense Level 33, Criminal History Category II, which authorized a sentence of 151-188 months, (2) the District Court enhanced Mr. Calhoun's Offense Level by two, to Offense Level 35, on the basis of its finding under U.S.S.G. 2D1.1(b)(1), (3) the Guidelines mandated a sentence of 188-235 months for Offense Level 35, Criminal History Category II, and (4) the District Court sentenced Mr. Calhoun to a prison term of 188 months, at the bottom of the range specified for Offense Level 35. The Government posits that "Sixth Amendment rights are not implicated when a judge sentences based on facts admitted by the defendant," and contends that no Sixth Amendment violation occurred here because, "even accepting the argument of the petitioner, he agrees that the Court *could* have sentenced him to 188 months based only on the facts he agreed to in his plea agreement." Government's Response at p. 3.

This is incorrect because it misapprehends both the terms of the Guidelines under which Mr. Calhoun was sentenced, and the nature of the constitutional violation proscribed by the Supreme Court in Booker.   Under the Guidelines, fact-finding produced offense levels, and offense levels (along with criminal history categories)

2

produced ranges of sentences that frequently overlapped.  Under <u>Booker</u>, the Sixth Amendment proscribes the mandatory use of the Guidelines to increase a defendant's sentence, based on facts found only by the court.  By focusing on what the District Court <u>could</u> have done under the Guidelines in a pre-<u>Booker</u> regime, the Government has missed a crucial element of the <u>Booker</u> analysis: What the District Court could <u>not</u> do when it sentenced Mr. Calhoun under a mandatory Guidelines regime.

The maximum Offense Level authorized by the facts admitted by Mr. Calhoun's guilty plea was 33, yielding a sentencing range of 151-188 months at Criminal History Category II.  The Court's finding under 2D1.1(b)(1) increased the Offense Level beyond that maximum, to 35, and increased the sentencing range to 188-235 months.  Under a constitutional, advisory Guidelines regime, the District Court would have retained the discretion to sentence Mr. Calhoun to punishment of less than 188 months, despite its finding that he had used a weapon; the mandatory application of the Guidelines took away that discretion.

What the District Court could <u>not</u> do, in other words, was what <u>Booker</u> says it must be permitted to do under a constitutional sentencing regime: treat the Guidelines as advisory and either (1) reject the Guidelines calculus as inappropriately harsh, or (2) modify that calculus by selecting Offense Level 33 as the most appropriate Guidelines range in light of the Court's consideration of the other sentencing factors enumerated in 18 U.S.C. §3553(a), and select a prison term at the bottom of that range as the most appropriate sentence under the circumstances.  Mandatory application of the Guidelines thus deprived Mr. Calhoun of his Sixth Amendment rights because, as the First Circuit has observed, "our principal concern in these <u>Booker</u> 'pipeline' cases is with the

likelihood that the defendant would have received a lesser sentence in a post-<u>Booker</u>

regime of advisory guidelines." <u>United States v. Heldeman</u>, 2005 WL 708397 at *3 (1st

Cir. 2005). As discussed below in Section B.2., the likelihood that Mr. Calhoun would

have received a lesser sentence in a post-<u>Booker</u> regime cannot be gainsaid here.

Therefore, to suggest that the District Court's fact-finding did not impermissibly increase

the sentence at issue is to engage, at best, in speculation about what the District Court

would have done under a constitutional sentencing regime, and mere speculation should

not serve to defeat Mr. Calhoun's constitutional claim.

**B.**      <u>**The Cause And Prejudice Standard Is Satisfied**</u>.

Pointing out that Mr. Calhoun did not object to his punishment on Sixth

Amendment grounds when he was sentenced, the Government suggests that this Court

ought to apply the "cause and prejudice" standard for unpreserved habeas claims of

constitutional error. It then argues briefly that Mr. Calhoun has shown neither (1) cause

for his failure to raise the issue before the sentencing court, nor (2) prejudice resulting

from the <u>Booker</u> error. Government Response at pp. 5-6. The Government is wrong on

both counts.

     **1.**      <u>**Cause**</u>

The Government says that, under <u>Engle v. Isaac</u>, 456 U.S. 107, 130 (1982), "the

futility of presenting an objection . . . cannot alone constitute cause for a failure to object

at trial." This may be true, but it at best tells only half -- the wrong half -- of the story.

Cause was not supplied here by the futility of a Sixth Amendment objection, but by the

fact that neither Mr. Calhoun nor his trial counsel had any reason at the time of

sentencing to anticipate that a <u>Booker</u>-style argument might even exist.

Focusing on the irrelevant question of "futility," the Government neglects to point out that, in <u>Engle</u>, the Supreme Court also made the following observation: "We might hesitate to adopt a rule that would require trial counsel either to exercise extraordinary vision or to object to every aspect of the proceedings in the hope that some aspect might mask a latent constitutional claim." <u>Id.</u> at 130.  The Court did not have to go further in <u>Engle</u>, because it found that "respondents' claims were far from unknown at the time of their trials."  <u>Id.</u>

However, two years later, in <u>Reed v. Ross</u>, 468 U.S. 1 (1984), the Court addressed the issue squarely and held that the novelty of a constitutional issue could, as a general matter, give rise to "cause" for a defendant's failure to raise the issue in the trial court or on direct appeal.  <u>Id.</u>at 13.  The test for "cause" is whether the constitutional issue was "reasonably unknown" to the defendant during the prior proceedings.  <u>Id.</u> at 14.

The Government does not, and cannot plausibly, contend that Mr. Calhoun's <u>Booker</u> claim fails to meet this standard.  He was sentenced in March 1994, more than ten years before the Supreme Court decided <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004), more than eleven years before it decided <u>Booker</u>, and more than six years before the Court began the analytical process that ultimately led to <u>Blakely</u> and <u>Booker</u> by deciding <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  Nothing in any of those decisions suggests that the Sixth Amendment violation identified by the Supreme Court in 2000-2005 had been sufficiently foreshadowed in March 1994 to take it out of the category of a "reasonably unknown" constitutional claim.

2.    __Prejudice__

The Government, citing <u>United States v. Frady</u>, 456 U.S. 152, 157 (1982), argues that Mr. Calhoun must show that the error below "worked to his actual and substantial disadvantage" in sentencing.  Government Response at p. 5.  Again citing <u>Frady</u>, the Government contends that this is a "significantly higher" burden than the one imposed by the plain-error test for unpreserved issues on direct appeal, and says that "Petitioner does not meet this higher standard as his sentence was within the guideline range he claims should have applied to him."  <u>Id.</u> at pp. 5-6.

This is the wrong standard, and it produces the wrong outcome.  In <u>Frady</u>, the Supreme Court said that the cause-and-prejudice test for habeas relief, in its <u>entirety</u>, presented a "significantly higher hurdle" than the plain-error test as it was then formulated.  <u>See</u> <u>Frady</u>, 456 U.S. at 166.  The <u>Frady</u> Court did not say that the "prejudice" element of the test for habeas relief, standing on its own, was significantly more demanding than the corresponding elements of the plain-error test for relief on direct appeal.  Since <u>Frady</u> was decided years before the Supreme Court clarified the plain-error standard in <u>United States v. Olano</u>, 507 U.S. 725 (1993), no useful element-to-element comparison could have been made at that time.

Later decisions, however, gave content to the prejudice standard.  As explained in <u>Prou v. United States</u>, 199 F.3d 37, 49 (1st Cir. 1999), prejudice under <u>Frady</u> is "one and the same" as the prejudice standard that applies to ineffective-assistance claims under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In both situations, the petitioner "must convince [the habeas court] that there is a reasonable probability that the result of the trial would have been different" absent the error.  <u>Prou</u>, 199 F.3d at 49.  In applying that

standard, moreover, "the burden of proof as to harmlessness falls on the government." Ellis v. United States, 313 F.3d 636, 644 (1st Cir. 2002), citing O'Neal v. McAninch, 513 U.S. 432, 438-44 (1995).

The "reasonable probability" test for prejudice in the habeas context turns out to be very similar to the "substantial rights" element of the plain-error test, as the First Circuit has recently applied the latter standard to unpreserved Booker errors on direct appeal. According to the First Circuit, the "substantial rights" element of the plain-error test is met when there is a "reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new 'advisory Guidelines' Booker regime." United States v. Antonakopoulos, 399 F.3d 68, 74 (1st Cir. 2005). And, according to a majority of the three-judge panel that decided United States v. Serrano-Beauvaix, 400 F.3d 50 (1st Cir. 2005), the commission of Booker error "should entitle the defendant [asserting an unpreserved Sixth Amendment claim] to a presumption of prejudice, which the Government can then try to rebut." Id. at 57 (Lipez, J. and Torruella, J., concurring).

In sum, under First Circuit law, the cause-and-prejudice test for unpreserved habeas claims, like the plain-error test for unpreserved appellate claims of Booker error, (1) requires only a "reasonable probability" that, but for the error, the defendant would have received a more favorable sentence, and (2) puts the burden of establishing a "harmless" error on the prosecution. The Government has not even attempted to carry that burden here, and could not do so if it tried. The record, though limited by the passage of time, shows that, in the District Court's opinion, the Guidelines sentence was "too severe," and that, in particular, the "criminal history category substantially

overstates the severity of the defendant's record." See Exhibit A, Judgment at p. 7.

Constrained by the mandatory nature of the Guidelines at the time, the District Court

could do no more than select the lowest sentence in the Guidelines range as "the most

appropriate." Id. Under those circumstances, a less onerous sentence under an advisory

Guidelines regime is at least a "reasonable probability," and the prejudice element has

been satisfied. See United States v. Heldeman, 2005 WL 708397 at *3 (finding plain

error where record contained "some indication that the district court felt itself constrained

by the guidelines").

**C.      Retroactive Application of Booker to the Petition At Hand.**

        The Government argues that Booker should not apply retroactively to the petition

at hand because "the courts have rejected all attempts to apply retroactively in §2255

proceedings the constitutional rights first recognized in Apprendi . . . and subsequently

extended in both Blakely and Booker." Government's Response at p. 3. "Every

appellate court to have considered the question, including the 2nd, 6th, 7th, 10th, and 11th

Circuits, has found that the rules announced in Apprendi, Blakely, and Booker do not

apply retroactively on collateral review." Government's Response at p. 4 and cases cited

there. The Government, in short, has made a strict appeal to authority. The authority to

determine whether Booker should apply retroactively, however, actually belongs to this

Court, for the following reasons.

        First, decisions of other circuit courts, "including the 2[nd], 6[th], 7[th], 10th, and 11th

Circuits," are not binding on a District Court in the First Circuit. McLaughlin v. UNUM

Life Insurance Co. of America, 224 F.Supp.2d 283, 291 n. 8 (D.Me. 2002).

Second, the Government incorrectly supposes that cases deciding the retroactivity of <u>Apprendi</u> and <u>Blakely</u> might be conclusive about the retroactivity of <u>Booker</u>. This misses an important difference between the reasoning of <u>Apprendi</u> and <u>Blakely</u>, on the one hand, and <u>Booker</u>, on the other. Under <u>Booker</u>, the "error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a <u>mandatory</u> Guidelines system." <u>Antonakopoulos</u>, 399 F.3d at 75 (emphasis added). <u>Cf. Blakely v. Washington</u>, 124 S.Ct. at 2538 (finding that state sentencing guideline violated Sixth Amendment because trial judge acquired ability to impose an enhanced sentence based on facts found by the judge, not the jury); <u>Apprendi v. New Jersey</u>, 530 U.S. at 490 ("any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").

Cases determining the retroactivity of <u>Apprendi</u> and <u>Blakely</u> are therefore inapposite, as the First Circuit recently recognized. Circuit precedent, such as <u>Sepulveda v. United States</u>, 330 F.3d 55 (1st Cir. 2003), will "resolve[] any comparable <u>Blakely</u>-like claim in this circuit." <u>Cirilo-Munoz v. United States</u>, 2005 WL 858324 at *4 (1st Cir., April 15, 2005). But Mr. Calhoun is not pressing a <u>Blakely</u>-like claim at this point. He is asserting his rights under <u>Booker</u>, and as to the retroactivity of <u>Booker</u>, given its emphasis on the application of mandatory as opposed to advisory guidelines, the First Circuit has yet to rule. <u>Id.</u> at *5-6.

In the absence of binding Supreme Court or First Circuit precedent, the District Court has the authority to decide for itself whether <u>Booker</u> should apply retroactively on

collateral review in this matter.  <u>Breese v. Maloney</u>, 322 F.Supp.2d 109, 114 (D.Mass.

2004); <u>Owens v. United States</u>, 236 F.Supp.2d 122, 130 (D.Mass. 2002).  The

Government's appeal to authority thus fails.

                                        Respectfully submitted,

                                        YANCE CALHOUN

                                        By his attorneys,


                                        <u>    /s/ Jessica C. Lowney     </u>
                                        Tracy A. Miner, BBO# 547137
                                        Andrew Nathanson, BBO# 548684
                                        Jessica C. Lowney, BBO# 655758
                                        Mintz, Levin, Cohn, Ferris,
                                          Glovsky & Popeo, P.C.
                                        One Financial Center
                                        Boston, Massachusetts 02111
                                        617-542-6000
                                        617-542-2241 (fax)

Dated: May 18, 2005

LIT 1520223v1

AO 245 B (Rev. 7/93) Sheet 1 - Judgm        Criminal Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| | (For Offenses Committed On or After November 1, 1987) |
| v. | Case Number: 1:93CR10020-001 |
| **Yancy Calhoun** | **Juliane Balliro, Esq.** |
| | Defendant's Attorney |

A TRUE COPY ATTEST 2 3 MAR 1994
Robert J. Smith, Jr., Clerk
U. S. District Court
Dist. of Massachusetts

By _____ Deputy Clerk

**THE DEFENDANT:**

[X]   pleaded guilty to count(s) _2-4, 6-15, 18-29_
[ ]   pleaded nolo contendere to count(s) _____
      which (was) (were) accepted by the court.
[ ]   was found guilty on count(s) _____
      after a plea of not guilty.

|  |  |  |
|---|---|---|
| | | Date |
| | | Offense |
| **Title & Section** | **Nature of Offense** | Count **Concluded** Numbers |

### SEE ATTACHED SHEET

The defendant is sentenced as provided in pages 2 through _7_ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ]   The defendant has been found not guilty on count(s) _____
[X]   Count(s)  _1, 5, 16 & 17_  are dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: **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**

Defendant's Date of Birth: **7/18/69**

Defendant's USM No.: _____

Defendant's Mailing Address:
**Essex County House of Correction**
**Middleton, MA 01949**

Defendant's Residence Address:
**Essex County House of Correction**
**Middleton, MA 01949**

**March 22, 1994**
Date of Imposition of Judgment

_(signature)_
Signature of Judicial Officer

**Rya W. Zobel**
**U.S. District Judge**
Name & Title of Judicial Officer

_3/23/54_
Date

UNITED STATES MARSHAL
MAR - 1994
BOSTON, MASSACHUSETTS

DEFENDANT:      Yancy Calhoun                                    Judgment-Page _2_ of _7_ Pages
CASE NUMBER:    1:93CR10020-001

## CONTINUATION OF PAGE ONE

| Title & Section | Nature of Offense | Date Offense Concluded | Count Numbers |
|---|---|---|---|
| 21:846 | Conspiracy to Distribute Cocaine Base and Cocaine | 2/93 | 2 |
| 21:841(a)(1); 18:2 | Distribution of Cocaine/Cocaine Base; Aiding and Abetting | 10/29/92 | 3, 7-9, 11, 14 |
| 21:841(a)(1); 18:2 | Possession of Cocaine/Cocaine Base with Intent to Distribute; Aiding and Abetting | 10/29/92 | 4, 10, 15 |
| 21:841(a)(1) | Distribution of Cocaine Base | 1/11/92 | 6 |
| 21:846; 18:2 | Attempt to Distribute Heroin; Aiding and Abetting | 10/23/92 | 12, 13 |
| 21:843(b) | Unlawful Use of a Communication Facility | 10/30/92 | 18-29 |

AO 245 B (Rev. 7/93) Sheet 2 - Imprisc

DEFENDANT:      Yancy Calhoun                                    Judgment-Page 3 of 7 Pages
CASE NUMBER:   1:93CR10020-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of  SEE ATTACHED SHEET .


[ ]   The court makes the following recommendations to the Bureau of Prisons:



[X]   The defendant is remanded to the custody of the United States Marshal.

[ ]   The defendant shall surrender to the United States Marshal for this district.

    [ ]   at _____ a.m./p.m. on _____ .
    [ ]   as notified by the United States Marshal.

[ ]   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons.
    [ ]   before 2 p.m. on _____ .
    [ ]   as notified by the United States Marshal.
    [ ]   as notified by the Probation or Pretrial Services Office.




## RETURN

I have executed this judgment as follows:

_____

_____

_____


Defendant delivered on _____ to _____
at _____ , with a certified copy of this judgment.


_____
UNITED STATES MARSHAL

By_____
Deputy Marshal

DEFENDANT:      Yancy Calhoun                                    Judgment-Page 4 of 7 Pages
CASE NUMBER:    1:93CR10020-001

## CONTINUATION OF IMPRISONMENT SHEET

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of:

188 months on counts 2, 6, 8, 14 and 15.

188 months on count 7, concurrent with counts 2, 6, 8, 14 and 15.

188 months on counts 3, 4, 9, 10, 11, 12 and 13, to be served concurrently with counts 2, 6, 8, 14 and 15.

48 months on counts 18 through 29, to be served concurrently with each other and with counts 2, 6, 8, 14 and 15.

AO 245 B (Rev. 7/93) Sheet 3 - Supen___ 'ease

DEFENDANT:      Yancy Calhoun
CASE NUMBER:    1:93CR10020-001

Judgment - Page 5 of 7 Pages

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 5 years on Counts 2, 6, 8, 14 and 15.  4 years on Count(s): 3, 4, 7, 9, 10, 11, 12, 13.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

While on supervised release, the defendant shall not commit another federal, state, or local crime.

While on supervised release, the defendant shall not illegally possess a controlled substance.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Financial Penalties  sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).  The defendant shall also comply with the following additional conditions:

### STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;
2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4)    the defendant shall support his or her dependents and meet other family responsibilities;
5)    the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6)    the defendant shall notify the probation officer within 72 hours of any change in residence or employment;
7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by physician;
8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)    the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245 B (Rev. 7/93) Sheet 5 - Financial Penalties

| DEFENDANT: | Yancy Camoun |
| CASE NUMBER: | 1:93CR10020-001 |

Judgment - Page 6 of 7 Pages

## FINANCIAL PENALTIES

The defendant shall pay the following total financial penalties in accordance with the schedule of payments set out below.

| Counts | Assessment | Fine | Restitution |
|---|---|---|---|
| 2-4, 6-15, 18-29 | $50.00 | | |
| Totals: | $1,250.00 | | |

### FINE

No fines have been imposed in this case.

### RESTITUTION

Restitution has not been ordered in this case.

### SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

The total fine and other monetary penalties shall be due as follows:

[X]    in full immediately.
[ ]    in full not later than _____.
[ ]    in _____ installments of $_____ over a period of _____ to commence 30 days after the date of this judgment. If this judgment imposes a period of incarceration, payment shall be due during the period of incarceration.
[ ]    in installments to commence 30 days after the date of this judgment. If this judgment imposes a period of incarceration, payment shall be due during the period of incarceration. During a period of probation or supervised release supervision payment of any unpaid balance shall be a condition of supervision and the U.S. probation officer shall establish and may periodically modify the payment schedule provided that the entire financial penalty is paid no later than the termination of supervision but in no event no later than 5 years after release from incarceration.

[ ]    The defendant shall pay the costs of prosecution.
[ ]    The defendant shall forfeit the defendant's interest in the following property to the United States.

All financial penalty payments are to be made to the Clerk of Court, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program.

AO 245 S (Rev. 4/90) Sheet 7 - Statement of R

Defendant: Yancy Calhoun
Case Number: 93-10020

Judgment—Page __7__ of __7__

## STATEMENT OF REASONS

☐ The court adopts the factual findings and guideline application in the presentence report.

### OR

☒ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

*the criminal history category substantially overstates the severity of the defendant's record*

**Guideline Range Determined by the Court:**

Total Offense Level: ____35____

Criminal History Category: ____II____

Imprisonment Range: _188_ to _235_ months

Supervised Release Range: __4__ to __5__ years

Fine Range: $ _20,000_ to $ _33 mil._

☒ Fine is waived or is below the guideline range, because of the defendant's inability to pay.

Restitution: $ _____

☐ Full restitution is not ordered for the following reason(s):


☐ The sentence is within the guideline range, that range does not exceed 24 months. and the court finds no reason to depart from the sentence called for by application of the guidelines.

### OR

☒ The sentence is within the guideline range, that range exceeds 24 months. and the sentence is imposed for the following reason(s): *It is already too severe and thus the low end of the guideline range is the most appropriate*

### OR

The sentence departs from the guideline range

☐ upon motion of the government, as a result of defendant's substantial assistance.

☐ for the following reason(s):